IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

— versus—                                              CASE NO. 1:20-CR-114-04-WMR-CCB

GEORGE K. E. ADATSI

SENTENCING MEMORANDUM

    Comes now Defendant, by and through undersigned counsel and files this Sentencing Memorandum in support of his request for a downward variance from the guideline range calculated in the Pre-Sentence Report, so that a reasonable sentence will be imposed in this case.

Introduction

    Defendant pled guilty to Count 1 of the indictment, charging him with participating in a money laundering conspiracy. For the reasons set out below and based upon the circumstances of his participation in the offense to which he has pled guilty, Defendant moves this Court to vary from the guideline calculation in the Pre-Sentence Report (herein after PSR) and to sentence him to a reasonable

term of imprisonment under the principals of 18 U.S.C. § 3553(a) and the Supreme Court's holding in United States v. Booker, 543 U.S. 220 (2005).

The Advisory Guideline Calculation in the PSR

The Total Offense Level as set out in the PSR is 27. Defendant has no criminal history points, putting him in Criminal History Category I. Hence, Defendant's presumptive Guideline Range is 70-87 months.

Reasonableness Under 18 U.S.C. § 3553(a)

The governing criteria for imposition of a reasonable sentence in a federal criminal case is found in the U.S. Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). In Booker, the Court determined that the Guidelines were no longer mandatory and that Trial Judges could impose sentences using the Guidelines as a starting point, but also considering the factors set out in 18 U.S.C. §3553(a) and the totality of the circumstances in the case. No longer is a sentencing court required to rely on guideline departures and a "heartland analysis" to deviate from a guideline sentence. Now, equally important to the process is consideration of the §3553 factors, a consideration that had been previously discouraged as a basis for departure under the mandatory pre Booker sentencing scheme. In this regard, the Supreme Court has emphasized that the advisory guideline system should continue to move sentencing in Congress's preferred

direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary. See United States v. Booker at 264-265.

The Eleventh Circuit in United States v. Sanchez, 236 Fed.Appx. 487 (11th Cir. 2007), has also offered guidance as to the new sentencing procedure when it observed:

> In our reasonableness review, we examine "only the final sentence for reasonableness, in light of the § 3553(a) factors," rather than "each individual decision made during the sentencing process." United States v. Bohannon, 476 F.3d 1246, 1248 (11th Cir. 2007). The review "is highly deferential" and the burden rests with the party challenging the sentence to prove that the sentence is unreasonable. Id. at 1248, 1253. "We recognize that there is a range of reasonable sentences from which the district court may choose," and will affirm as long as the sentence imposed by the district court achieves the purposes of sentencing as stated in § 3553(a)."

See Sanchez, supra at 489-90. See also United States v. Posadas-Aquilera, 336 Fed.Appx. 970 (11th Cir. 2009). The 11th Circuit has also concluded that reasonable sentences may vary downward from the applicable guideline range, see United States v. Williams, 435 F.3d 1350, 1355 (11th Cir. 2006) (Williams II), where a lower sentence was justified because of the defendant's "individual history and the nature of the charge against him." See also United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005); United States v. Gray, 453 F.3d 1323, 1325 (11th Cir. 2006) and United States v. Halsema, 180 Fed. Appx. 103, 105 (11th Cir. 2006),

all of which support lower sentences, as long as worthy grounds are posited and found below.

18 U.S.C. § 3553(a)'s primary directive is to impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. This "parsimony principle" should undergird every decision a district court ultimately makes at sentencing. See <u>United States v. Clay</u>, 483 F.3d 739, 745 (11th Cir. 2007) and <u>Sanchez</u>, *supra*. at 489-90. Moreover, 18 U.S.C. § 3661 makes it clear that a district court in reaching a sentencing decision may consider all aspects of a defendant's "background, character, and conduct." This provision becomes even more significant when read in *para materia* with the factors set forth under § 3553(a), all of which address the need for the sentence imposed. §3553(a) instructs that a sentence should:

- Reflect the seriousness of offense;
- Promote respect for the law;
- Provide just punishment for the offense;
- Afford adequate deterrence;
- Protect the public from additional crimes of the defendant; and
- Provide the defendant with needed educational and vocational training, medical care, or other corrective treatment in the most effective manner.

Other pertinent factors covered by § 3553(a) address the following aspects:
- History and characteristics of the defendant,
- The nature and circumstances of the offense,
- The objective of avoiding unwarranted sentencing disparities among similarly situated defendants;
- The kinds of sentences available, and
- The advisory sentencing guideline range, as well as policy statements promulgated by the Commission.

Defendant suggests that a downward variance is appropriate in this case for the following reasons:

—   While Defendant is not challenging the loss amount calculation, it is important to point out the basis some of the loss amounts being attributed to Defendant.

In regard to Pacific Western Bank (PSR ¶¶ 33-44) the only reference to Defendant is that carbon copies of two checks were found in a residence in which Defendant lived with other roommates who were also involved in fraudulent criminal activity.

In regard to Nosal Builders (PSR ¶¶ 45-52), the PSR describes 7 checks made out to 7 different individuals, none of whom are Defendant. Defendant had knowledge of this scheme, but did not benefit financially from it.

In regard to Wayne Resa (PSR ¶¶ 53-56), the PSR makes a conclusory statement that the bank account in question was "controlled by both Okang and Defendant" despite the fact that Okang opened the account using a fake name.

In regard to Enclave Development (PSR ¶¶ 57-63) the PSR states that the bank account to which a fraudulent wire transfer was made belonged to "a close associate" of Defendant.

In regard to I.O.A. (PSR ¶¶ 83-84), the individual in question is described as a "victim" although there does not seem to be any basis to conclude that. Of the

$865,550 loss amount attributed to this "victim," $251,640 was deposited in accounts belonging to Defendant.

—       With respect to the Guideline calculation, it is important to point out that the loss table set out in USSG § 2B1.1(b)(1) is incredibly regressive in the middle range, starting with § 2B1.1(b)(1)(J). Defendant, along with other co-defendants, is being held responsible for an intended loss amount of over $3,500,000. That loss amount increases Defendant's offense level by 18 points, which comes to $195,000 per point. If the loss amount had been over $9,500,000, each point would represent $475,000 - almost two and half times more than the amount attributable to Defendant.  At a loss amount of more than $25,000,000, each point would represent over $1,000,000; and at a loss amount of $550,000,000 each point would represent over $18,000,000 - about 92 times more than the amount attributable to Defendant.

—       The Intended Loss amount as set out in Paragraph 137 is $4,373,339.89, which results in an additional 18 points to the offense level.  The Actual Loss was $3,373,797.43, which is below the threshold of the 18 points called for in § 2B1.1(b)(1)(J).

—       In this district, it is very common in drug conspiracy cases for each defendant to be held accountable for the amount of drugs that they actually participated in, rather than the total amount of drugs involved in the conspiracy as a whole.  In USA vs. Hugo Solano-Garcia, Case No. 1:18-CR-103-LLM, for

example, Defendant Confesor-Camilo was held accountable for 1 kilo of methamphetamine, despite the fact that more than 100 kilos of methamphetamine was recovered from the conspiracy as a whole.

Defendant is **not** requesting that he be held accountable solely for the dollar amount attributable to him for fraud schemes in which he actually participated. Defendant is, however, requesting that be sentenced for the **total** Actual Loss amount of $3,373, 797.43, rather than the Intended Loss amount of $4,373,339.89, by way of a two level downward variance. Given the vast disparity between what is attributable to most drug defendants as compared to most financial fraud defendants, it would be a real stretch to argue that it would be unfair for Defendant to be held accountable "only" for the **entire** actual loss amount attributed to the conspiracy as a whole.

Personal Factors

It has been expressed on countless occasions at sentencing that punishment in a criminal case must not only fit the offense but also the offender. This axiom of law was recognized as an integral part of the sentencing process long before the enactment of the Sentencing Guidelines and § 3553(a). <u>Williams v. New York</u>, 337 U.S. 241, 247 (1949); <u>Pepper v. United States</u>, 131 S. Ct. 1229, 1240 (2011). With the enactment of the guidelines, however, we have seen the evolution of their use

over the years as well as their impact on the sentencing process. Their use has gone from a mandatory regime with an almost intractable mandate to an advisory tool used by the sentencing judge in fashioning a reasonable sentence based upon the totality of the circumstances of the case; and the people charged. And, although the district courts are no longer bound to the calculations under the guidelines after United States v. Booker, 543 U.S. 220 (2005), they still must consult them and take them into account when sentencing as well as the 18 U.S.C. §3553(a) factors which set guideposts for the court in determining whether a sentence is reasonable. Booker, 543 U.S. at 261-62. The primary goal of sentencing in the post Booker era being, of course, to impose a sentence that is sufficient, but not greater than necessary.

Defendant is 37 years old.  He is a conditional permanent resident with an application for citizenship pending and his two minor children reside in Atlanta, Georgia. He has **zero** criminal history points.

Recommendation

Defendant respectfully requests that the Court grant Defendant a two level downward variance, which would make his Total Offense Level 25. That, with a Criminal History Category of I, would put him in a Guideline Range of 57-71 months. Defendant suggests that a term of incarceration of 60 months would be a fair and just sentence.

Respectfully submitted,

*/s/ Jeff P. Manciagli*
Jeff P. Manciagli
Georgia Bar No. 468578

CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send email notifications of such filing to all counsel of record in this matter.

This 16th day of July, 2021.

*/s/ Jeff P. Manciagli*
Jeff P. Manciagli
Georgia Bar No. 468578

66 Lenox Pointe NE
Atlanta, GA 30324
770.234.9744